We'll call the next case the United States of America versus the Territory of the Virgin Islands and Ronald Gillette proposed intervener and Mr. DeRusso. Good morning Judge Fischer, Judge Nygard, Judge Cowan, Joseph DeRusso with Mr. Molinaro. On behalf of Ronald Gillette, the intervener below, and the request will be granted. Your Honor, this case below is, well, the court is very familiar with the factual basis, but based on the government, by that I mean the federal government, based on the federal government's motion to dismiss in the 2241 case, the very next day I moved to intervene in the case below. And the district court determined that intervention under federal civil procedure 24 was inappropriate. I moved to... Let me ask you when you did that, why didn't you also file a 1983 action? Well, Your Honor, I personally was well aware of Nagaris. The Virgin Islands government had actually argued, I attempted to bring a section 1983 case against the federal government in one of my tax cases, and the Virgin Islands government appropriately moved to Nagaris. So I knew, in the light of binding Supreme Court precedent, I'm out of luck with 1983. I'm not going to bring... The relief you're asking for here would be prospective relief, and there's at least a good argument that could be made that you would be able to bring a case for injunctive relief against the territory of the Virgin Islands. I would not foreclose that possibility, however, given the fact that I have, for sure, an ongoing case where both parties are present, why would I engage in this speculative litigation where I know where I can bring it for sure and save a lot of time and effort. I just wanted to get that on the table. So, the very next day after the United States government moved to dismiss, I moved for leave to intervene under two bases, mandatory and permissive. The district court ultimately ruled against the both the reasons on the permissive and the mandatory and brief, but today, I want to focus on the mandatory intervention. The district court ruled, ultimately, that the intervention was both untimely and there was adequacy of representation. We dispute both those points. First, as to the timeliness. One, I think it goes... It's in the use of discretion, but as a matter of... I believe it's well established that when a district court makes, or a trial court makes a decision, an erroneous rule, an erroneous error of law that qualifies as abuse of discretion, or in the alternative, when this court feels as confident that a mistake was made. Here, this court should be confident that a mistake was made because it was not untimely. First of all, Mr. Gillette was sentenced in, or the guilty verdict came down in his criminal case in June of 2009. So, all the time before then, Mr. Gillette obviously was not in the Golden Grove. He wouldn't have standing to intervene. He would have been an interloper at best. However, I think it's well established, Mr. Gillette has some serious mental health problems based on the filings that Mr. Gillette filed pro se with this court in the direct criminal field. I think we can all agree that Mr. Gillette is not competent. Based on his lack of competency, we would submit that it's inappropriate for any court to hold against an incompetent litigant his inability to bring forth a case. Was the judge required to have a hearing to determine competency before he could determine timeliness? Well, I wouldn't go that far. However, since it was... Otherwise, it's mere speculation, is it not? Well, Your Honor, in this particular case, it wouldn't have been necessary because the district court, Judge Lewis, was the one that held the competency hearing on the direct criminal appeal upon remand and was the same judge. So, to that extent, she already had an evidentiary hearing where she heard the testimony of Dr. Margarita Julia. So, I would submit it would have served no purpose to have another hearing to have to rehash all the issues and all the testimony that Judge Lewis was obviously well aware of. He's never been adjudicated incompetent, though? No, there's never been any type of civil commitment proceedings where he's been, quote-unquote, adjudicated incompetent. I would bring the court's attention, though, upon remand before Judge Lewis on the direct criminal case, both myself, on Mr. Gillette's behalf, and the United States government filed a joint proposed findings of facts and conclusions of the law where me and the federal government agreed that Mr. Gillette was not competent to withdraw his appeal. So, to the extent that the government might contest that Mr. Gillette has never been adjudicated incompetent, I would submit that that's, you know, that they've waived that. If they wanted to bring it, they should have brought it in another context. That is a fact, though. I mean, that is a fact. I think we could recognize there's no adjudication of his incompetence. I would not dispute that. Whether they dispute it or not, that's the record. That is the record. There's nothing out there that has formally adjudicated Mr. Gillette incompetent. So, but going back to the timeliness, we need to take a holistic view of this case. It's been going on for 26 years, and just last week, the monitor, the court-appointed monitor, you know, filed and I used and I moved to file a supplemental appendix, and a supplemental appendix in this case that starts on supplemental appendix page 77. It continues forward. We haven't decided that motion. Can't we just look at that? Can't we just take judicial notice of that? Yes, you could because it is part of the record below. It's part of the record below. It is part of the record below. You don't really need to make it part of the appendix in this case. Well, I'd like to cross that T and dot that I just to make sure there's no dispute. Yeah, I just wanted to make sure it is part of the record below. Yeah, and before this court, for this court's consideration. Mindful that the court probably doesn't want to scour the record below. But based on the monitor's report, what we have here is we have no foreseeable end to the litigation below. The settlement agreement itself didn't require any timelines, and assuming, and this is a big assumption here, that Golden Grove ever becomes compliant, the district court will have an additional year of jurisdiction. So, given that, based on the monitor's report, it doesn't appear that we will have any type of resolution in the foreseeable future, and you tack on the additional year, in this context, the timeliness was appropriate. Now, I understand that the vet ship has sailed in respect to the settlement agreement, and I'm fine with that because now it's a matter of the remedial measures. What does Mr. Gillette, what kind of right does he have to enforce that settlement agreement? A settlement agreement where he's an obviously intended beneficiary is our position that, insofar as the remedial aspects remain of the case below, Mr. Gillette's intervention was more than timely. So that if Mr. Gillette, if this court remains today, Mr. Gillette will go back, and we will see how the litigation plan plays out in respect to the federal government and the Virgin Islands as to what are the remedies now, based on the monitor's report, that Golden Grove isn't anywhere close, 108 out of the 119 provisions are in noncompliance. Judge, judges, this has gone on for 26, 27 years, and I would submit, realistically speaking, we're probably going to have a decade more of additional litigation. Within this context, Mr. Gillette's intervention was more than timely. Now, turning to the other portion of the decision below. Let me just clarify something. You were appointed to represent Mr. Gillette, in this case, as a friend of the court, were you not? That is true, along and in the direct criminal appeal, yes, I was. And on a direct criminal appeal. Yes. If we were to, if Mr. Gillette's intervention would be permitted, under what procedure would you continue to represent Mr. Gillette? If I understand, well, I guess the question becomes what happens with the habeas case. Right. But putting the habeas case aside, I guess I would have to, I would represent him on Rule 17C, like I'm doing now. Okay. On a professional level, Your Honors, Mr. Gillette, barring a 2255 or some other interesting relief, is going to spend the rest of his natural life at Golden Grove. And as an attorney, I want to make sure that Mr. Gillette, to the extent that he meets his passing, his passing comes from natural causes and not from improper medical treatment. And I think we can all admit that Golden Grove is constitutionally defective. So in this case, Mr. Gillette, he needs to intervene. He needs to be there because he needs some type of relief. All right. Let me add because your time is running short here. Move on from the timeliness a second. Adequate representation. Yeah. Why isn't the United States, having brought this action against the Territory of the Virgin Islands, adequately representing Mr. Gillette's interest and the interest of the other inmates? Your Honors, I think it's easy. If I make the analogy to Brown v. Plata, there the Supreme Court said, it's like a spider web with tugging on one part of the web will redistribute the tension in a complex manner to the other parts of the web. I think we all can agree with that. Here, Mr. Gillette is interested in not the web in total. He's interested in the portion of the web, the strands that touch him. So to the extent that we have limited funds in order to correct Golden Grove, which I think we all can admit that's going to be the case, it will be a zero-sum game. With those limited funds, there will be some winners and there will be some losers into where those limited funds go. So as far as Mr. Gillette is concerned, if those limited funds go to other portions of the prison that don't affect him, to other inmates, for example, given female inmates who are not incompetent, that don't affect him, the United States' interests in Golden Grove in large are very, very different than Mr. Gillette's parochial, discreet views, which this Court and Kessler recognize. And I would also turn this Court's attention to the United States v. Oregon case, where in that case the Ninth Circuit even quoted the legislative history of CIPRA, which talks about the United States litigating not a path. So there were conflicting interests in Kessler. There were partially conflicting and, the phrase I use, co-extensive but not necessarily co-determinist, running alongside with but not necessarily ending at the same place. And here, that's where we have. Mr. Gillette's interests may be, and probably are, they run alongside the other inmates at Golden Grove. But where they end, that is why this case is different, and that's why the adequacy of the representation on the United States government on behalf of Mr. Gillette is very different. What can you peg the fact on that the government would not adequately represent not only the other people that are in need of care, but Mr. Gillette's problem as well? Your Honor, I think that the United States government is going to have to make some difficult choices. With the limited funds the Virgin Islands government can put forth to correct Golden Grove, and these limited funds, and with the difficult choices, there will be some winners and there will be some losers. So to the extent, and I'm sure Mr. Gillette is going to perceive that he's a loser, the United States government doesn't represent and inadequately represents Mr. Gillette. I see my time has expired. We'll have you back on rebuttal. Thank you. Okay, Mr. Paquin? Yes. If it please the Court, Attorney Paul Paquin on behalf of the Virgin Islands. I am making an appearance on behalf of the Virgin Islands and also to advise the Court that having adopted the brief of the USA on the merits in this case, that it is the position of the Virgin Islands and also with the USA that the USA will argue this matter on the merits and that the Virgin Islands likewise will intend to adopt and to join in to the USA's oral argument to be presented here before the court. Why didn't you do the same thing on the prior case? I was not involved in that case. Well, your office was, though. My office was, but I only became aware of that case last week. I understand that. I'm not trying to shoot the messenger here, but maybe it just seemed a little strange that, particularly under the jurisdictional question and the party and interest question, that the office of the Attorney General wasn't represented here. In the previous case, 1305. Yes, you might want to take that message back to Mr. Frazier. Well, yes, I will. Thank you. We understand your position on this case. Okay, thank you. Ms. Eichhorn. Thank you. Good morning. May it please the Court, Jennifer Levin Eichhorn on behalf of the United States. The district court denied and made Gillette's motion for intervention for two independent reasons, the untimeliness of his motion. Ms. Eichhorn, I've concluded because of the high ceilings, we're having a little bit of difficulty with the sound, so would you try to do your best to speak into that? You bet. Thank you. Does that help? That's helpful. Okay, that's pretty loud. The district court's decision is both supported by the record and consistent with this precedent and therefore well within the court's discretion and therefore this court should affirm. As you know, timeliness and adequacy of representation are two of the four factors for intervention. Yeah, well, why should we, on timeliness, why? Sure. We could almost say as a matter of law that this thing is, anything goes on for 26 years like this and there's no resolution, why can't we just say we don't have to have any fact-finding here, we don't have to have a district judge to weigh whether it's timely or not. As a matter of law, this is untimely, 26 years. In this case, the district court made specific findings with respect to the last 15 months and that's the appropriate picture here. Well, okay, but those last three months are connected to a history, a pattern of conduct here, which very few people would give any hope for any resolution of this in the next 26 years. Well, certainly the United States has hope for improvements with a new settlement agreement and the like, but I think what's important to recognize is that the district court, notwithstanding a passing reference to the lengthy history of this case, made its decision on timeliness based on and looking at the stage of the proceedings, the prejudice to the parties, and when counsel had notice of this case, which was at least six months prior. In fact, his opening brief was saying, he pursued this litigation at the time he became aware of the conditions at Golden Grove, that at a minimum that would be January of 2012, when he quotes verbatim from our motion for receiver in his habeas petition, and arguably earlier when he had first notice of Dr. Julia's report back in August of 2011, which identified issues with Mr. Gillette, some of which are verbatim in her January letter. So you're looking at the stage of the proceedings when in June of 2011, the United States moves for appointment of a receiver. The Virgin Islands moves to terminate this litigation. Judge Lewis gets involved, is reassigned to this case in September of 2011. He files his habeas in January of 2012. Beginning in the fall of 2011, the parties are engaged in extensive negotiations and discovery, which becomes more intense following the district court's ruling in February of 2012, so that you have the parties engaged in extensive discovery and a compressed schedule for six months prior to when he moves to intervene. So you're going to have an advanced stage of the proceedings. You have prejudice to the parties when he moves to come in, when there's an announcement of an agreement shortly after his motion. One of the things that's interesting in this case, and I don't think we can totally ignore it, is the time factor here. Gillette moved to intervene through counsel the day after the U.S. The day after the U.S. said that 2241 wasn't the proper remedy. That's correct. Okay. And you heard Mr. DeRusso say here that there's a question, at least in his mind, probably is in ours too, that the 1983 remedy against the territory is at least up in the air, even if it's prospective. So they moved to intervene here. Is that really untimely? Yes, it is, Your Honor. In light of your position in the 2241? Yes, it is, for a couple reasons. First, in Donovan, this case specifically held that strategic decisions by counsel when they did not pursue intervention but sought separate litigation, and even in that case when that separate litigation was dismissed for lack of jurisdiction, that it was untimely to move into the existing case. So a strategic decision that's made by counsel can still lead to lack of timeliness when that other case is dismissed for lack of jurisdiction. Here you have a party, Mr. Gillette, who the district court found in the 2241 was incompetent to withdraw an appeal. And a direct appeal. Not competent to withdraw a direct appeal. Right. Okay. And the period of time in which Mr. DeRusso was representing Mr. Gillette was not that long, and when you signaled that you didn't think 2241 was the proper remedy, they moved to intervene. But, Your Honor, again, he was aware of this litigation at least by January of 2012, and he doesn't move to intervene in our case until July of 2012, when the district court has initially scheduled the evidentiary hearing for July and postponed it back to January 2015. So it's not until July until you show your card on the 2241. No, no, no, no. The July evidentiary hearing in the Golden Grove litigation had been set in February 28th. Well, let me ask this. On your best estimate, how much longer will it take to resolve this matter? Your Honor, the parties are making that effort. Well, you've got to answer that. You say it's going to be resolved, so give us a time, reasonable time you think that it's going to take to resolve this matter, without them being parties to the litigation. Your Honor, the United States hopes that they make best efforts in the most timely way. I can't give us much of a time frame. Well, you sound like you're selling stock, best efforts. That doesn't go here. Then why shouldn't we adjourn this for six months and see whether it's resolved in six months? I mean, what do we do? We could adjourn it for 26 more years. The only issue on appeal here was his motion to intervene back in July of 2012, whether or not at the time the district court ruled, whether or not he was timely, and whether or not at that stage the United States was adequately representing his interests. Frankly, counsel has raised a whole new issue in saying, well, perhaps I ought to be allowed at the remedial stage. Well, that requires a separate motion in district court to figure out whether or not the remedial stage. That's not, frankly, with all due respect, for you folks to decide at this stage whether or not intervention for the remedy. That's not the issue before you. The fact that the conditions are subpar and that they need to be improved, nobody can test that. But that's not the basis on which this court should decide whether or not intervention is appropriate. Well, it's timeliness. So I'm asking you, if timeliness was correct for the district court, then I'm asking you how much longer will it take to resolve this matter? That's what the district court said. It said they're out of time. It's going to be wrapped up, in effect. It was untimely because of not only the expedited schedule that was set for discovery, but the concern that if you were to become involved, the findings that had been made to date would become stale and then no longer appropriate for PLRA findings for the court should it make such findings, and the fact that there was an agreement. So this court's evaluation is based on the time that the district court made its decision whether or not it was untimely. The question of how long it may take the Virgin Islands and the United States, with the help of the monitor and the experts, to improve conditions is a wholly separate question apart from what needs to be decided here today. Let's move to the adequacy of representation question. Sure. Obviously, it's the United States position that we do, indeed, adequately represent Gillette. We have brought a case seeking to correct systemic problems at the institution. The settlement agreement, when it's implemented, will provide relief not only to Mr. Gillette but the several hundred other inmates who are there, so that this court would need to make a strong showing to overcome the presumption and favor the United States representation when we are doing so as a plaintiff pursuant to our authority under CRIPA. The reference to Kleisler is different. There are a couple of reasons. First, in that instance, the United States was a defendant, and there were competing interests that were at stake. Here, it's an action solely to ensure constitutional care on various aspects of the institution. He has not shown that his specific interests are different than the United States' goal of constitutional care. Well, he has shown it's taken all this time, and whether or not you're able to really put it over, because part of the adequacy of representation is when is this going to be resolved. The district court specifically found that we were adequately representing him, and you would have to find that that was an abuse of discretion. The fact that this is an ongoing matter. You've had it this long, and there's been no resolution of anything. Looking at it from his standpoint, why should he feel as if he's being adequately represented when it's taken you this long and, in effect, nothing has been done in 26 years? The United States has made efforts to pursue systemic relief and change. He is pursuing individual relief. As this court has frequently pointed out and as he has conceded, nothing stops him from pursuing the administrative process, and in 1983 for the prospective relief that he sought in his habeas position, and that was part of his petition for habeas. He actually hasn't even filed a complaint and intervention. He filed a petition and intervention, which is identical to his habeas petition, which simply seeks prospective relief. We understand that. What would be wrong with us putting this matter off for six months or a year at most, maintaining jurisdiction and the panel coming down and then resolving your adequacy of representation issue at that time? I don't think that resolves the question. I mean, it's whether or not he ought to be involved in this case. He has other avenues of relief if he's looking for specific relief. It's not clear. A practical standpoint. Yes. Ms. Eichhorn, your colleague, Mr. Cohen, argued that 2241 is not proper, asked us to affirm the district court's dismissal on jurisdictional basis. You're saying intervention is not proper, affirm the district court on that decision, but you're saying, well, he's got another remedy, got a 1983. In a time when all of us should be thinking about how do you preserve resources, why doesn't it make more sense just to let Mr. Gillette into this case? And certainly the district court can limit the participation as it sees fit from a practical sense. From a practical sense. We have to decide this mess. Our monitor and the experts that have been hired have an expertise in systemic change and programmatic change, and that is what they're working on. He's looking for I want X treatment, I want you to give me X treatment for this condition or X and Y and Z. That kind of specific relief is different from the systemic change. But would happen and follow as a result of making the systemic change that the United States and the Virgin Islands is pursuing. Holding this for six months or a year doesn't matter. I'm not saying we should hold it for six months or a year. Okay. I'm saying why don't we just. And in terms of what's the best relief. So then what would stop the other 400 inmates saying, well, I would like to come in and I would like to have X services provided to me which haven't been yet. It's unclear how there could be any rational management of that. The mere fact that he may not have a relief in either of these cases doesn't mean that the standards, doesn't mean that this court should relax the standards for Rule 24 to allow him in. Absolutely. Just one more thing. You notified the district court that you had reached a settlement. Is that right? Is that correct? Do I have that? Yes. We notified it was approximately. You submitted a proposed agreement to the district court. That was shortly after this motion to intervene was filed. Is that correct? That's correct. And do you know the status of that? That settlement agreement was ultimately approved in May of this year, and that's what led to the appointment of a monitor. Just a point on that. And as a result of that settlement agreement, the case was actually more closed. Was it not? That I'm not aware of. All right. That. I mean, I know that the parties are working closely with the monitor, and they're here for the second round of review. You should go over to the lectern, Mr. Paquin. Sorry? Move over to the lectern. I'm sorry. To my knowledge, the case is not closed. The agreement that was signed and approved in May, and the government is negotiating a contract with the monitor at this time. But pending the contract, the monitor did turn in his first report last week. And one of the conditions of the agreement is that the government pay the fees of the monitor. So there is a financial burden or incentive, not to say that work would not be done to meet the constitutional requirements without that. And I believe that one comment that Attorney Eichhorn made is that if a party is allowed to intervene, then does that mean that there is one more person at the negotiating table for the contract? That would complicate things. So I just wanted to make those closing comments. Thank you. Mr. DeRusso? Thank you, Your Honor. I think the representations of Virgin Islands Council are very relevant. There's no end in sight. The litigation we're going on in Golden Grove, no end in sight. Now, I think the timeline is important because the 2241 was filed on January 31, 2012. On July 20, 2012, the United States moved to dismiss. On July 21, I moved to intervene. On August 31, the proposed settlement agreement was filed. And that proposed settlement agreement, the terms on it itself provide for no terms, no ending. See, what makes this case different is it's not like you have a judgment, money's paid, the case is over. This is not a class action case where the class is certified, monies are paid, things are done, the case is over. This case has 26 years of history, and I would submit it's probably got another 26 years of additional history. That's why most of the case law that addresses the timeliness, in my opinion, it makes a poor-looking view. Instead of taking here, the appropriate perspective is what's left. And the representations of Virgin Islands Council is there's going to be a lot left. And based on the monitor's report, I would submit there's going to be a lot left as well. So in these unique facts, the intervention was more than timely. Well, what do you have to say about the fact that if we let you intervene, how about all the other people who are in need of care? There's got to be some control here that can't be passed. Absolutely, and I would say I would just point to Rule 23. The court could then certify class. You could have class representatives. Things can be done. The number of people at Golden Grove, the number of potential litigants would be no different than any type of class action. There are rules for that. The court can handle that. And guess what? That would bring everyone together with everyone's divergent interests, to the extent they do diverge, in one place, one time, to facilitate the purposes of intervention. Bring it all together instead of having these disparate actions all over the place. This was not an application for class action certification, though. No, absolutely not. So you have here, if there's no class action here, you have you coming in and representing an individual and someone else could come and represent 20 different Sure. 20 people coming in for individual representation. Potentially, but that parade of horribles, if it were ever to come to pass, if any other individuals actually did that, and I would submit, Your Honors, in the 26 years Someone would certify it or move for class action. Right. But isn't it odd that in the 26 years of the ongoing litigation, I'm the first person to do that? This is the first one. So I think if the past is an indicator of the future, it may not be that that were to ever happen. Now, turning to the adequacy of representation, I would submit that government counsel for the federal government brought up about how these experts are what the experts were tasked to do and how to make these systemic changes and how that is different from Mr. Gillette. That makes my point exactly. The United States government and those experts are tasked with the Virgin Islands, Golden Grove writ large. They are not tasked with what's going on with Mr. Gillette in particular. So to the extent that there are other inmates there, and there are plenty of others who don't have mental health issues, who just have medical issues, those concerns are, of course, with the United States government. The argument you make, in a way, is an argument against yourself. And your argument really is that there should be class action certification here. There's been none. But their position is we can't allow you to intervene because then everyone else would also be allowed to intervene. But that runs contrary to the purpose of intervention, to bring all the people together in one case and resolve it all at one time. Well, no, someone that intervenes, intervenes on their own behalf unless they're certified to class. So that your argument that you should be allowed to intervene, it sort of defeats the fact that if there's intervention allowed here, it should be class action intervention. I wouldn't go that far, but I'll pose it this way, Judge Cowen. If this court affirms and then a separate 1983 action is brought by me on behalf of Mr. Gillette, what's going to happen? We're going to have a motion to consolidate for purposes of discovery, and it's going to be back before the same judge, with the same people, perhaps with two different case numbers. Well, the 1983 case would be a damaged case, quite frankly. Well, I can tell you right now that it doesn't do the inmates very good to get monetary damages. They need prospective injunctive relief. Well, it could be prospective injunctive relief, but as well as could be, it would be a monetary judgment as well. It's not aimed at class action certification here. Well, I would submit the prospective injunctive relief, what the inmates and Mr. Gillette will be looking for, it's really what's going on in the heart of the case below. Fixed Golden Grove. Nothing's going on in 26 years. It's not getting any better based on the monitor's report filed just last week. Something needs to be done. And I ask the court for the reasons articulated today and the briefs that the court reverse and remand. Thank you very much. All right, thank you, Mr. DiRusso. And to all counsel, we thank you for a well-argued case. And to Mr. DiRusso and Mr. Molinaro, we thank you for your assistance on the case on behalf of Mr. Gillette. We'll take this matter under advisement.